IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:08CR415 / 8:09CR40 |
| | ) | |
| v. | ) | |
| | ) | **SENTENCING MEMORANDUM** |
| RAFAEL PAHUA-MARTINEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court for sentencing. This memorandum opinion supplements findings made on the record at a sentencing hearing on May 20, 2009. The defendant, Rafael Pahua-Martinez, was charged with illegal reentry after deportation after conviction of an aggravated felony under 8 U.S.C. § 1326(a), subject to sentencing under § 1326 (b)(2), and with violating the terms of his supervised release. *See* Case No. 8:08CR415, Filing No. 1, Complaint; Case No. 8:09CR40, Filing No. 2, Petition for Offender under Supervision. For the reasons stated on the record and set out below, the court imposes a sentence of 21 months on the illegal reentry charge and a sentence of 6 months on the violation of supervised release for a total sentence of 27 months.

**I.  FACTS**

Pursuant to a plea agreement, Pahua-Martinez entered a plea of guilty to the illegal reentry charge and agreed to waive his rights to a deportation/removal hearing and to an appeal and agreed not to move for a departure or variance from the United States Sentencing Guidelines ("the Guidelines"). Case No. 8:08CR415, Filing No. 27, Plea Agreement at 1-2. He further agreed that the sentencing enhancement provision of 8 U.S.C. § 1326(b)(2) "may apply in this case because he was convicted of a drug

transportation felony before his deportation. *Id.* (emphasis added). The government agreed to move for a two-level "fast-track" departure and to move for a three-level downward adjustment for acceptance of responsibility. *Id.* at 1; Filing No. 35, Modified Presentence Investigation Report ("PSR") at 4.

The supervision violation case was transferred to his court from the United States District Court for the Eastern District of California. Filing No. 1 in 8:09CR40. The petition in that case alleges that the defendant violated the terms of his supervised release by committing the crime of illegal reentry after deportation. Case No. 8:09CR40, Filing No. 2. The defendant admitted to the allegation that he violated the mandatory condition which stated that he "shall not violate another federal, state or local crime" by reentering the country after he had been deported without obtaining the permission from the attorney General or the Department of Homeland Security. *See* Case No. 8:09CR40, Filing No. 12; Case No. 8:08CR415, Filing No. 33, Text Minute Entries.

The court accepted Pahua-Martinez's plea of guilty on the illegal reentry charge, but deferred acceptance of the plea agreement pending the preparation of a PSR by the United States Office of Probation (hereinafter, "the Probation Office") that calculated the defendant's sentence under the Guidelines. Case No. 8:08CR415, Filing No. 22, Text Minute Entry. The Probation Office based its outline of the offense conduct on the prosecutor's version of events. *Id.*, Filing No. 35, Modified PSR at 4. The prosecutor related that Pahua-Martinez was stopped for speeding by the Nebraska State Patrol and was determined to be a citizen of Mexico who had previously been deported and did not have permission to be in the United States. *Id.* at 4. The prosecutor also stated that

Pahua-Martinez had "a felony conviction from the State of California for Transportation of a Controlled Substance (Methamphetamine)." *Id.*

The Probation Office determined that U.S.S.G. § 2L1.2(a) provided a base offense level of 8 for the defendant's illegal reentry conviction. *Id.* at 5. It found that a 16-level upward adjustment was applicable for reentry after conviction of a drug crime under U.S.S.G. § 2L1.2(b)(1)(A)(i). *Id.* The application of that enhancement resulted in an adjusted offense level of 24. *Id.* The Probation Office then subtracted three levels for the defendant's acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a total offense level of 21. *Id.* In the event the court accepted the plea agreement, the defendant would receive a two-level "fast track" departure, resulting in a total offense level of 19. *Id.* at 9.

The Probation Office assessed 3 criminal history points for the defendant's 2001 drug-transportation conviction and 3 points for the 2007 illegal reentry conviction. *Id.* at 5. It added 2 points pursuant to U.S.S.G. § 4A1.1 because Pahua-Martinez was on supervised release for the California illegal reentry conviction when he committed the instant offense and 1 point under U.S.S.G. § 4A1.1(e) for committing the instant offense less than two years following release from prison. *Id.* at 6. Pahua-Martinez's resulting criminal history category is IV. *Id.*

At base offense level 21 and criminal history category IV, Pahua-Martinez's Guidelines range of imprisonment is 57 to 71 months. At base offense level 19, he would face a guideline imprisonment range of 46-57 months. *Id.* at 9.

The government adopted the findings in the PSR. Filing No. 28. The defendant objected to the PSR and moved for mitigation of his Guidelines sentence. Case No.

3

8:08CR415, Filing Nos. 29 & 32, Objections; 30 & 31, sentencing mitigation motions. He argued that his prior conviction for transportation of a controlled substance does not qualify as a drug trafficking offense under U.S.S.G. § 2L1.2(b)(1)(A)(i) and thus the 16-level adjustment should not be applied. He further argued that he did not agree to the application of the enhancement in his plea agreement, noting use of the word "may." The criminal complaint and plea colloquy from the defendant's drug conviction in California state court were admitted into evidence at the sentencing hearing. *See id.*, Filing No. 34, Exhibit List, Ex 1.

The evidence shows that the defendant pled nolo contendere to the charge of "transportation of a controlled substance, to wit, methamphetamine" in California state court. *Id.* at 2. The plea colloquy indicates that the factual basis for the plea was that the defendant was a passenger in a vehicle in which 13 pounds of methamphetamine were found. *Id.,* Ex. 1, Transcript of Plea, Judgment, and Sentence at 6. He was sentenced to three years on that charge. *Id.* at 8. He was later deported after serving roughly 18 months. *Id.* at 8. He was subsequently charged in the federal court with illegal reentry after deportation. *United States v. Pahua-Martinez*, Case No. 2:06CR489, Filing No. 1, Complaint. The 16-level adjustment for a reentry after a conviction for a felony drug trafficking offense was not factored into his Guidelines sentence in that case. *Id.*, Filing No. 10, Plea Agreement. He was sentenced to 14 months on the federal charge. *Id.,* Filing No. 11, Judgment and Commitment.

## II.  LAW

The Sentencing Guidelines are no longer mandatory. *United States v. Booker,* 543 U.S. 220, 260-61 (2005). In *Booker,* the Supreme Court held that the mandatory

4

Sentencing Guidelines system violated the Sixth Amendment. *Booker,* 543 U.S. at 226-27. In the *Booker* remedial opinion, the Supreme Court determined that the constitutional violation would be cured by modifying the federal sentencing statute to make the Guidelines effectively advisory. *Id.* at 245. Consequently, the range of choice in sentencing dictated by the facts of the case has been significantly broadened. *Gall v. United States,* 552 U.S. 38, —, 128 S. Ct. 586, 602 (2007) (finding a sentence outside the Guidelines to be reasonable); *Kimbrough v. United States,* 552 U.S. 85, —, 128 S. Ct. 558, 570 (2007) (noting that courts may vary from Guidelines ranges based solely on policy considerations, including a disagreement with the Guidelines); *Rita v. United States,* 551 U.S. 338, —–, 127 S. Ct. 2456, 2465 (2007) (holding that a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations"); *Cunningham v. California,* 549 U.S. 270, —, 127 S. Ct. 856, 867 (2007) (stating that judges are no longer tied to the sentencing range indicated in the Guidelines but are obliged only to "take account of" that range along with the sentencing goals Congress enumerated in 18 U.S.C. § 3553(a) of the Sentencing Reform Act). District courts must "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough*, 552 U.S. at —, 128 S. Ct. at 570 (*quoting Booker,* 543 U.S. at 245-246). These cases "mean that the district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 577 (Scalia, J., concurring): *see also Spears v. United States,* — U.S. —, —, 129 S. Ct. 840, 843 (2009) (per curiam) (recognizing the district courts' authority to vary from Guidelines based on policy disagreement).

Although the Guidelines remain "the starting point and the initial benchmark" in determining a sentence, the district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented." *Gall,* 552 U.S. at —, 128 S. Ct. at 596-97. "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.,* 552 U.S. at —, 128 S. Ct. at 596. If the court decides that an outside-Guidelines sentence is warranted, the court must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. *Id.* The Supreme Court rejects, however, the notion that "'extraordinary' circumstances [are required] to justify a sentence outside the Guidelines range" and rejects "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id.* at 595.

The Sentencing Reform Act "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing, including 'to reflect the seriousness of the offense,' 'to promote respect for the law,' 'to provide just punishment for the offense,' 'to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.'" *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 570 *(quoting* 18 U.S.C. § 3553(a)). The statute further provides that "in determining the appropriate sentence, the court should consider a number of factors, including 'the nature and circumstances of the offense,' 'the history and characteristics of the defendant,' 'the sentencing range established' by the

Guidelines, 'any pertinent policy statement' issued by the Sentencing Commission pursuant to its statutory authority, and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id. (quoting* 18 U.S.C. § 3553(a)).

Congress established the Sentencing Commission ("the Commission") "to formulate and constantly refine national sentencing standards," in fulfillment of its important institutional role. *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 570; *Rita v. United States,* 551 U.S. at —, 127 S. Ct. at 2464. When operating within that institutional role, the Sentencing Commission "has the capacity courts lack" and can "'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting United States v. Pruitt,* 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)). In formulating the Guidelines, the Commission developed and used data on past practices and recidivism. *See* United States Sentencing Comm'n, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 72-73 (November 2004), available at http:// www.ussc.gov/15_ year/15year.htm ("Fifteen-Year Assessment"); U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567. *Gall,* 552 U.S. at —, 128 S. Ct. at 594 (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions").

Based on these sentencing statistics, the Commission established the offense levels for each crime, linked to a recommended imprisonment range. Fifteen-Year Assessment at 14. Accordingly, in many cases the Guidelines represent a reasonable estimation of a

fair sentencing range. *See Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574. When Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on an empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *See, e.g., Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting Rita*, 551 U.S. at —, 127 S. Ct. at 2465); *see also Gall,* 552 U.S. at —, 128 S. Ct. at 594 n.2 (noting that not all Guidelines are tied to empirical evidence). Consequently, the Guideline ranges of imprisonment for those crimes are a less reliable appraisal of a fair sentence. *See Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574-75. In such cases, it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 575; *see also Spears,* — U.S. at —, 129 S. Ct. at 842 (noting that a "categorical disagreement with and variance from the Guidelines is not suspect" where Guidelines "do not exemplify the commission's exercise of its characteristic institutional role.")

For policy reasons, and because of statutory mandatory minimum sentences, the Commission departed from past practices in setting offense levels for certain crimes. Fifteen-Year Assessment at 15, 72-73; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567. The original Sentencing Commission implemented sentences "significantly more severe than past practice" for "the most frequently sentenced offenses in the federal courts" including

fraud, drug trafficking, immigration offenses, robbery of an individual, murder, aggravated assault and rape." Fifteen-year Assessment at 47.

The Commission originally set the § 2L1.2 offense level at 6 based on its analysis of past sentencing practices. See U.S.S.G. § 2L1.2 (Nov. 1, 1987). Over the years, the Sentencing Commission has increased the severity of punishment for immigration offenses in response to congressional directives. See, e.g., U.S.S.G. app. C, Vol. I, amends. 38 (Nov. 1, 1988), 193 (Nov. 1, 1989), 375 (Nov. 1, 1991); U.S.S.G. app. C (Supp.), amend. 651 (Nov. 1, 2002). In 1988, it increased the offense level to 8 to create a harsher penalty. U.S.S.G. app. C, Vol. I, amend. 38. In 1989, the Commission provided for a 4-level enhancement for defendants previously convicted of certain felonies. U.S.S.G. app. C, Vol. I, amend. 193. The Commission stated that this enhancement was to apply in addition to the inclusion of the prior offense in the defendant's criminal history score. Id. In 1990, Congress expanded the definition of "aggravated felony" to include "crime[s] of violence . . . for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least 5 years" and "any illicit trafficking in any controlled substance." Immigration Act of 1990, Pub. L. No. 101-649, § 501(a)(3), 104 Stat. 4978, 5048 (1990); see 8 U.S.C. § 1101(a)(43). In response, the Commission raised the offense level dramatically, adding a 16-level enhancement for those aliens previously convicted of felonies designated as aggravated. U.S.S.G. app. C, Vol. I, amend. 375. As its reason for the amendment, the Commission stated only that it had determined "that these increased offense levels are appropriate to reflect the serious nature of these offenses." Id. In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act, which further extended the definition of "aggravated felony" to include crimes of violence "for

which the term of imprisonment [is] at least one year." Pub. L. No. 104-208, Div. C, §§ 321(a)(3), 322(a)(2)(A), 110 Stat. 3009-546, 3009-627 (1996).

The Guidelines section applicable to immigration crimes increases a defendant's base offense level by sixteen if the defendant was previously deported following "a conviction for a felony that is . . . (i) a drug trafficking offense for which the sentence imposed exceeded 13 months." U.S.S.G. § 2L1.2(b)(1)(A)(i). "Drug trafficking offense" is a term of art specifically defined for purposes of this section in the accompanying commentary. U.S.S.G. § 2L1.2(b)(1)(A)(i), cmt. n.1(B)(iv). For these purposes, "[D]rug trafficking offense' means an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." *Id.* In the Ninth Circuit, "transportation" of a controlled substance does not necessarily equate to trafficking. *See United States v. Navidad-Marcos*, 367 F.3d 903, 906, 908 (9th Cir. 2004) (stating that California drug-crime statute includes acts that fall outside the Guideline's "drug trafficking" definition). In this circuit, when a statute is over-inclusive, that is, it criminalizes both conduct that would qualify a defendant for an enhancement as well as conduct that would not, it is appropriate for the district court to consider the terms of the charging document, a plea agreement or a transcript of the plea colloquy or "'some comparable judicial record of this information,' in order to determine whether the plea 'necessarily rested' on facts equating to the qualifying offense." *United States v. Garcia-Medina*, 497 F.3d 875, 877 (8th Cir. 2007) *quoting United States v. Vasquez-Garcia,* 449 F.3d 870, 877 (8th Cir. 2006)).

The fairness of the Guidelines is heavily dependent on fair and reasonably consistent charging policies in the Department of Justice. Fifteen-Year Assessment at 23-

24. Empirical evidence shows that charging and plea bargaining practices continue to introduce significant disparities into the sentencing regime. Fifteen-Year Assessment, Executive Summary at xii.

### III. ANALYSIS

#### A. Guideline Calculation

The court will first calculate the defendant's sentence under the advisory Guidelines. The court adopts the findings in the PSR. The defendant's objections to the PSR are overruled. The court finds that Pahua-Martinez's base offense level under the Guidelines is 8. See U.S.S.G. § 2L1.2. The court further finds that, under Eighth Circuit law, a 16-level adjustment under U.S.S.G. § 2L1.2(a) is applicable. The transcript of the plea colloquy in that case shows that the defendant was transporting over 13 pounds of methamphetamine, from which the court can infer intent to distribute, and he admitted to all of the elements of the offense. The application of that adjustment results in an adjusted offense level of 24. The court finds an adjustment for acceptance of responsibility is warranted and the government moves for a three-level adjustment, resulting in a total offense level under the Guidelines of 21. The court accepts the plea agreement, and the parties agree that the plea agreement contemplates a two-level "fast track" departure. Accordingly, the defendant's total offense level is 19. At criminal history category IV, the defendant's advisory Guidelines term of imprisonment is 46 months (three years and ten months) to 57 months (four years and ten months).

#### B. Section 3553 Factors

In considering the nature and circumstances of the offense, the court notes that illegal reentry is a serious crime. Section 2L1.2 is designed to measure the seriousness of the offense of conviction, and the fact of deportation following the commission of a

drug-trafficking offense is a relevant measure of the severity of the crime.  In this case, however, the defendant's underlying offense is less serious than many drug-trafficking offenses.  The defendant was a passenger in a vehicle in which drugs were found and entered into a favorable plea agreement with the government.  That conviction was not perceived as serious enough to qualify for application of the drug-trafficking enhancement in an earlier case.  Further, although base offense level calculation is aimed at offense-specific conduct and criminal history calculation is aimed at defendant-specific conduct, there is some element of double counting that attaches to the heavy weight afforded to prior convictions in the immigration area.  The interplay between offense conduct and criminal history category cannot be ignored in making the 3553(a) determination because it affects the determination of both the nature and circumstances of the crime and the history and characteristics of the defendant.  Here, the defendant's only criminal history consists of the two crimes at issue in this case.  His culpability in the underlying offense is questionable and his situation is, at most, a borderline case for application of the enhancement.

Rafael Pahua-Martinez was twenty-four at the time of his drug offense.  He was married in 2002 to Michelle Martinez and has one child, age three, and his wife is expecting another child.  His wife and child are U.S. citizens.  He has a sixth-grade education.  He can speak, read and write some English and was employed by an excavating company before his arrest.  Pahua-Martinez and his wife own a house in California and Pahua-Martinez owns an avocado ranch in Mexico.  His wife and children will relocate to Mexico on his release from incarceration.  The court finds that the history and characteristics of the defendant warrant an outside-the-Guidelines sentence in this case.

The court has consulted and taken the Sentencing Guidelines into account. The court has used the Guidelines calculation as its initial starting point. However, since the immigration-crimes Guidelines are driven by Congressional directive, rather than empirically grounded, the Sentencing Commission was not operating within its characteristic institutional role in drafting the Guidelines and the advice imparted in those Guidelines can be afforded less deference by the court. The court finds that the Guidelines ranges of imprisonment are not a reliable appraisal of a fair sentence in this case. Even under the mandatory Guidelines, a departure from the 16-level enhancement was appropriate where there was a perceived disparity between the 16-level enhancement and the seriousness of the underlying felony. U.S.S.G. § 2L1.2 cmt. (n.5); *United States v. Diaz-Diaz*, 135 F.3d 572, 581 (8th Cir. 1998). The fact that courts disagree on whether a conviction for "transporting" controlled substances as a passenger in a vehicle qualifies as a drug trafficking offense indicates that the seriousness of the offense does not match the harshness of a 16-level enhancement.

Moreover, the differences in the law interpreting these sentencing issues in the Eighth and Ninth Circuits would result in considerable unfairness to Pahua-Martinez if a Guidelines sentence were imposed in this case. The court must take into account the differences in sentencing between these jurisdictions in fashioning a fair sentence under section 3553(a). The United States District Court for the Eastern District of California previously declined to impose a 16-level enhancement for the same prior conviction that is the predicate for the enhancement in this case. If Pahua had been arrested and charged in California with illegal reentry, a 4-level, rather than 16-level, enhancement would most likely have applied. Under that scenario, Pahua-Martinez's total offense level,

after adjustments, would have been 10 and his sentencing range would have been 15 to 21 months.

The court has also considered the need to avoid sentencing disparities. The history of legislative enactments with respect to immigration sentencing reflects Congressional concern with dangerous drug traffickers and violent criminals. Pahua-Martinez does not fall within that class. The court finds that a shorter sentence than that recommended under the Guidelines is necessary to respect the California courts' perception of the severity of Pahua-Martinez's underlying drug crime. Further, the sentence recognizes the difference in charging and plea bargaining practices in different jurisdictions and attempts to ameliorate the disparate impact of those decisions.

The court finds that a sentence of 21 months followed by a sentence of 6 months for the violation of supervised release will provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. The 21-month term is considerably longer than his earlier sentence for illegal reentry and longer than the sentence he actually served on the drug crime. The sentence is at the high end of the sentencing range that he would have faced without the 16-level enhancement. Because the defendant reentered the United States in order to be with his family, and the family will now be residing in Mexico, the sentence will be adequate to provide specific deterrence to the defendant. The deterrence value of any longer sentence would be marginal. There is little need to protect the public from the defendant's future crimes because he will be deported. The sentence also provides general deterrence to those who would illegally reenter the country in that it conveys the message that illegal reentry results in significant jail time in addition to deportation.

A Judgment and Commitment and Statement of Reasons in accordance with this Sentencing Memorandum will issue this date.

DATED this 2nd day of July, 2009.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge